IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BOYD SMITH, NANCY SMITH, JOEY SMITH, JEFFREY SMITH, JILL SMITH, BESSIE HACKNEY, WILLIAM GRAY, PEGGY GRAY, and GREGORY HOUSTON, for themselves and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs | ) | |
| v. | ) | No. 3:04-cv-591 |
| FIRST CENTURY BANK, CONNIE DYER, SHERI LAWSON, KAREN WILLIAMS, and DELORIS GRAVES, | ) ) ) | |
| Defendants | ) | |
| and | ) | |
| FIRST CENTURY BANK, | ) | |
| Counter-Plaintiff | ) | |
| v. | ) | |
| BOYD SMITH, *et al.*, | ) | |
| Counter-Defendants | ) | |

**MEMORANDUM OPINION**

This putative class action[1] was filed as the result of allegedly fraudulent activity by defendant First Century Bank (FCB) and four of its current or former employees, defendants Connie Dyer, Sheri Lawson, Karen Williams, and Deloris Graves.[2] The class of plaintiffs for whom this action is filed is specifically described as follows:

> All customers of the Union County branch of [FCB] whose identities and/or financial information were used by employees or representatives of [FCB] without permission to issue loans, obtain credit, transfer funds, transfer property interests, and for other financial transactions during the period from January 1, 1998 to the present.

[Doc. 1, p.2]. The putative class seeks compensatory, punitive and statutory damages as well as injunctive and equitable relief pursuant to federal and state law as follows:

    1. Violation of the Racketeer Influenced and Corrupt Organizations Act (Civil RICO), 18 U.S.C. §§ 1961, *et seq.* (Count I);

    2. Violation of the federal Consumer Credit Protection Act, 15 U.S.C. § 1681s-2 (Count II);

---

[1] A hearing to determine whether this action should be certified as a class action pursuant to Fed.R.Civ.P. 23(c) has been set for July 12, 2005.

[2] The court takes judicial notice of the fact that a separate putative class action has been filed by Ernest and Patricia Nicely making essentially these same allegations against these same defendants, except for Karen Williams, who is not a defendant in that case. *See* Case No. 3:05-cv-175, presently pending before the Honorable R. Leon Jordan, U.S. District Judge. *See* Fed. R. Evid. 201(b) and (c).

3. Violation of federal statutes and regulations for protection of confidentiality of consumer information (Count III);

4. Violation of the Tennessee Identity Theft Deterrence Act of 1999, T.C.A. §§ 47-18-2101, *et seq.* (Count IV);

5. Violation of the Tennessee Consumer Protection Act (TCPA), Tennessee Code Annotated §§ 47-18-101, *et seq.* (Count V);

6. Violation of the Tennessee Financial Records Privacy Act, Tennessee Code Annotated §§ 45-10-101, *et seq.* (Count VI);

7. Breach of fiduciary duty (Count VII);

8. Conversion (Count VIII); and

9. Negligence (Count IX).[3]

This matter is presently before the court on the motion to dismiss filed by defendant Karen Williams [*see* Doc. 16], and the issues raised have been well briefed by the parties [*see* Docs. 17, 31, and 32]. For the reasons that follow, defendant Williams' motion will be granted, and this case will be dismissed against her.

---

[3]Count X seeks equitable relief only and therefore does not allege a particular cause of action.

I.

*Factual Allegations*

Plaintiffs have filed a complaint comprising more than 23 pages against the five defendants.[4] According to the complaint, defendant Connie Dyer, the Assistant Vice-President and Chief Loan Officer of the Union County Branch of the FCB, devised a scheme to obtain loans in the names of unwitting customers including, but not limited to, the nine plaintiffs. Furthermore, according to the complaint, this scheme was in effect for an incredible length of time - some six and a half years.

Defendant Karen Williams previously served as a loan processor for FCB. According to the complaint, defendant Williams was a notary public and improperly used her seal to authenticate the forged signatures of plaintiffs William and Peggy Gray on real estate documents transferring the real property interests of those plaintiffs to FCB. It is undisputed that defendant Williams has not worked at FCB for several years.

---

[4]The court is not counting, of course, the nine pages of verifications filed by the nine plaintiffs.

4

In order to analyze the allegations against defendant Williams in the context of a motion to dismiss filed pursuant to both Fed.R.Civ.P. 9(b) and 12(b)(6), the court will turn to the specific allegations of the complaint against this defendant and only against this defendant. Those allegations are as follows:

. . .

>    11.    Each of the Plaintiffs was a customer of [FCB] ... through its branch office in Union County, Tennessee.

. . .

>    14.    **Karen Williams** was an employee of the Union County branch of [FCB].

. . .

>    16.    Each of the Plaintiffs received by mail or telephone notice of the existence of loans or notice of late payment on loans through [FCB] for which Plaintiffs never applied or received funds; received notice of unauthorized transfers of funds from their checking accounts, savings accounts, or other assets, including certificates of deposit; or received notice of other financial transactions in which they did not participate and which they did not authorize in any way.
>
>    17.    By mail or telephone, Connie Dyer assured each of the Plaintiffs that the unauthorized loans and transactions were the result of a "computer error" or "mistake", and that the incorrect transactions would be corrected.
>
>    18.    Plaintiffs continued to received late payment notices on loans for which they never applied and which they never received and/or continued to receive notices of

financial transactions in which they never participated or authorized.

19. Upon information and belief, during the period from January 1, 1998, through August 2004, Connie Dyer, Sheri Lawson, Deloris Graves, **Karen Williams**, and other representatives of [FCB] whose names are unknown at this time, forged the signatures of bank customers, including Plaintiffs; notarized forged signatures of bank customers, including Plaintiffs; and otherwise without permission used the identities and confidential financial information of Plaintiffs and other customers of the Union County branch of [FCB] to fraudulently obtain loans, obtain credit, obtain funds, transfer funds, transfer property interests, and convert assets of Plaintiffs and other bank customers.

20. Upon information and belief, the methods by which Defendants and/or other bank representatives fraudulently used the identities and confidential information of the bank customers include, but are not limited to, the following examples:

<u>William and Peggy Sue Gray</u>

. . .

f) **Karen Williams**, Connie Dyer, and other bank employees prepared real estate documents, including modifications of deeds of trust and corrections of modifications of deeds of trust, transferring real property interests of Williams and Peggy Gray to [FCB] (a.k.a. First Claiborne Bank) to secure repayment of loans that William Gray and Peggy Gray never received and of which they had no knowledge. The names of William Gray and Peggy Gray were forged on these real estate documents. **Karen Williams**, Connie Dyer and Sheri Lawson notarized forged signatures of William and Peggy Gray, falsely attesting that William and Peggy Gray personally appeared and

6

> acknowledged the forged signatures. Connie Dyer and Deloris Graves signed these forged documents on behalf of the bank. A representative of [FCB] recorded these forged documents with the Union County Register of Deeds, thereby creating security interests for the bank in the real property of William and Peggy Gray to secure loans the Grays never received and about which they knew nothing.

[*See* Doc. 1, pp.3-6 (emphasis added)]. Finally, it must be noted that plaintiffs have alleged in ¶ 38 of the complaint that, "[w]hen some Plaintiffs met with representatives of [FCB] to discuss problems with loan documents, the bank representatives physically concealed the documents from Plaintiffs by partially covering the documents with their hands or paper, so that Plaintiffs could only see their forged signatures, but could not determine the nature of the documents." [Doc. 1 at p.11].

II.

***Motion to Dismiss Pursuant to Fed.R.Civ.P. 9(b)***

In Count I, plaintiffs allege that defendants violated 18 U.S.C. § 1962(a), (b), and (c) by the commission of various fraudulent acts. In her pending motion, defendant Williams first contends that this count of the complaint must be dismissed

7

pursuant to Fed.R.Civ.P. 9(b) because it fails to set forth specific acts by her that constitute fraudulent behavior.

Rule 9(b) of the Federal Rules of Civil Procedure provides that in a complaint alleging fraud, "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. AmeriTrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (citations omitted). The Sixth Circuit interprets Rule 9(b)'s requirement "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted). As noted by the *Michaels* court, the liberal reading stems from the influence of Rule 8 which "requires a 'short and plain statement of the claim,' and calls for 'simple, concise and direct' allegations." *Michaels*, 848 F.2d at 679. Nevertheless, even against Rule 8's "backdrop admonition of simplicity in pleading," [*id.*], "allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with sufficient factual basis to support an inference that they were knowingly made." *Coffey*, 2 F.3d at 162 (internal quotation marks and citation omitted).

8

It is beyond cavil that courts have applied the pleading standards of Rule 9(b) to RICO complaints. As one court has observed, "[w]ithout that insistence on specificity, the [RICO] Act is virtually limitless in its application." *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042, 1046 (D. Utah 1983). Otherwise, the "mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute." *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D. Ga. 1983). Moreover, where mail fraud and wire fraud are alleged, as in the instant case, courts are particularly sensitive to these pleading requirements, requiring "specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme." *Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F.Supp. 447, 458 (E.D. Mich. 1994) (emphasis in original) (citations omitted).

Against this legal background, the allegations against defendant Williams fall woefully short of the requirements of Rule 9(b) in the context of a civil RICO case. The only specific allegation as to Ms. Williams is that she prepared one or more real estate documents that provided security for repayment of certain fraudulently obtained loans and that she notarized one or more of the forged

9

signatures of plaintiffs William and Peggy Gray.  In fact, because of the loose manner in which this defendant has been "lumped in" with the other defendants in the complaint, it is difficult, if not impossible, to ascertain whether plaintiffs allege that this defendant has even prepared more than one false real estate document and/or whether she has notarized more than one forged signature of one of the Grays.

Nevertheless, the court notes that an exception to the particularity requirement of Rule 9(b) exists when the relevant facts "lie exclusively within the knowledge and control of the opposing party ... ." *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 489 (6th Cir. 1990) (citation omitted).  In such a case, pleading upon information and belief is permissible although the plaintiff "must plead a particular statement of facts upon which his belief is based." *Id.* (citation omitted). Consequently, a court should be reluctant to dismiss an action pursuant to Rule 9(b) when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted.  *See Michaels Bldg. Co.*, 848 F.2d at 680.

Here, plaintiffs have alleged that the defendants are in control of the evidence of the financial transactions that are the basis of this complaint.  In fact, as alleged in ¶ 38 of the complaint, FCB representatives physically concealed forged and fraudulent documents by covering the documents with objects so that plaintiffs could see only their forged signatures;  consequently, plaintiffs could not determine

the nature of the documents. Under these circumstances, this court is reluctant to dismiss this complaint against defendant Williams pursuant to Rule 9(b) because the documents are exclusively within the control of FCB and because no discovery has been undertaken. That is not an end to this inquiry, however.

III.

*Motion to Dismiss Pursuant to Rule 12(b)(6)*

Defendant Williams next contends that Count 1 of the complaint should be dismissed against her pursuant to Fed.R.Civ.P. 12(b)(6). Technically, a Rule 12(b)(6) motion does not attack the merits of the case - it merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 1364 at 340 (Supp. 1987). In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint sets forth sufficient allegations to establish a claim for relief. In conducting its review, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Powell v. Jacor Communications Corporate*, 320 F.3d 599, 601-02 (6th Cir. 2003) (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411 (1969). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.*, 386 F.Supp. 255 (E.D. Mich. 1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**A.**

**Section 1962(a) of RICO**

Plaintiffs first allege that the defendants, presumably including Williams, violated 18 U.S.C. § 1962(a) "by receiving income derived from a pattern of racketeering activity ... ." [Doc. 1, p.12]. The complaint then lists the various predicate acts which were committed by these defendants which comprise the racketeering activity.

Section 1962(a) of RICO provides in part:

12

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

It is well settled in the Sixth Circuit that plaintiffs must plead a specific injury to them caused by the investment of income into the racketeering enterprise, distinct from any injuries caused by the predicate acts of racketeering. *Craighead*, 899 F.2d at 494 (dismissing § 1962(a) claim when plaintiffs alleged "only injuries traceable to the alleged predicate acts"). The instant complaint simply does not allege any injuries stemming from the investment of the ill gotten income, distinct from injuries stemming from the predicate acts. There is not even an attempt to employ boilerplate language in this respect.[5] Rather, this complaint alleges at most that defendant Williams forged the signatures of bank customers and notarized those forged signatures and received income from doing so. In fact, as has been previously pointed out, it is impossible to ascertain from this complaint whether plaintiffs allege that defendant Williams actually forged any signatures or simply notarized the forged signatures of one of the Grays on one occasion. In short, the

---

[5]That is not to suggest, however, that such a tactic would defeat the pending motion on this issue.

13

allegations of this complaint come nowhere close to meeting the Sixth Circuit's requirement of a distinct "investment injury." *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir.), *cert. denied*, 513 U.S. 1017 (1994) (affirming the district court's dismissal of the amended complaint under Rule 12(b)(6) for plaintiff's failure to allege investment injury as opposed to injuries as a result of the predicate acts which were part of the pattern of racketeering activity). Accordingly, plaintiffs have failed to state a cause of action under § 1962(a) against defendant Williams.

**B.**

**Section 1962(b) of RICO**

Plaintiffs next claim that the defendants, presumably including defendant Williams, violated 18 U.S.C. § 1962(b) "in that by or through the above-described pattern of racketeering activity, they acquired or maintained, directly or indirectly, interest in and/or control of an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, namely, [FCB], as well as the enterprise consisting of Connie Dyer, Sheri Lawson, Karen Williams, Deloris Graves and other [FCB] employees whose names currently are unknown." [Doc. 1, p.13]. Section 1962(b) of RICO provides in part:

> It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which

14

>is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).

"A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise *through* (or by way of) the pattern of racketeering activity." *Advocacy Organization for Patients and Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 328 (6th Cir. 1999) (emphasis in original). Furthermore, a complaint for violation of § 1962(b) must allege an "'acquisition or maintenance' injury separate and apart from the injury suffered as a result of the predicate acts of racketeering activity". *Id.* at 329 (citing *Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991)).

Like their allegations pursuant to § 1962(a), plaintiffs' allegations under sub-section (b) suffer from a similar and fatal flaw. The only harm to plaintiffs set forth in this complaint, at least as it pertains to any harm generated by defendant Williams, is the harm resulting from the fraud which constitutes the alleged predicate acts. However, injury from the racketeering acts themselves is not sufficient; rather, plaintiff must plead facts tending to show the acquisition or control of an interest injured these plaintiffs. *See Delorean v. Cork Gully*, 118 B.R. 932, 946 (E.D. Mich. 1990). Consequently, plaintiffs' allegations against this defendant pursuant to §

15

1962(b) also miss the mark of stating a specific cause of action against defendant Williams. Therefore, this cause of action must be dismissed against her.

## C.
### Section 1962(c) of RICO

Finally, plaintiffs allege that defendants violated 18 U.S.C. § 1962(c) "by being persons employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and conducting or participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, as described above." [*See* Doc. 1, p.13].

Section 1962(c) of RICO provides in part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ... .

18 U.S.C. § 1962(c).

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court clarified the scope of 18 U.S.C. § 1962(c). Specifically, the Court stated:

16

> [I]t is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity.

*Id.* at 184.  The Court further observed as follows:

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs.  Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.  The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Id.* at 179 (emphasis in original) (footnote omitted).

Here, the complaint contains no factual allegations whatsoever to support the bare assertion that defendant Williams participated in the operation or management of FCB or the alleged enterprise consisting of the individual defendants.  Plaintiffs have not alleged that defendant Williams made any business decision whatsoever for either of these entities or that she had any relationship with either entity other than providing occasional notary services for FCB.  In the court's view, these sparse allegations are insufficient to allege a cause of action under §

17

1962(c).  *See Paycom Billing Services v. Payment Resources*, 212 F.Supp.2d 732, 741 (W.D. Mich. 2002) (dismissing RICO claim where plaintiff did not adequately allege that defendant conducted or participated in the conduct of an enterprise through racketeering activity).  *See also Eby v. Producers Co-op, Inc.*, 959 F.Supp. 428, 432 (W.D. Mich. 1997) (dismissing RICO claim where there were no allegations that the defendant knowingly engaged in directing the enterprise).

Additionally, in this case, it appears that the solitary allegation that defendant Williams participated in the conduct of the RICO enterprise is contradictory to the more specific allegations of this complaint.  This complaint is replete with allegations concerning the fraudulent acts of Connie Dyer, who is the one person alleged to be directing the affairs of the enterprise consisting of the individual defendants and to some extent the FCB enterprise.  A fair reading of all of the allegations indicates no participation in the operation or management of either enterprise by defendant Williams.  Accordingly, plaintiffs' cause of action against defendant Williams under § 1962(c) must be dismissed for failure to state a claim upon which relief can be granted.

IV.

*Violation of the Federal Consumer Credit Protection Act
15 U.S.C. § 1681s-2*

Count II of the complaint sets forth allegations only against defendant FCB. In fact, plaintiffs admit in their opposition brief that there is no claim against this defendant in this count [*see* Doc. 31, p.23]. Accordingly, defendant Williams' motion to dismiss Count II of the complaint is well taken and will be granted.

V.

*Violation of Federal Statutes and Regulations for
Protection of Confidentiality of Consumer Information*

Count III of the complaint, like Count II, makes specific allegations only against defendant FCB. And again plaintiffs candidly admit in their response brief that they make no allegation that defendant Williams violated these statutes [*see id.*]. Accordingly, defendant Williams' motion to dismiss Count III of the complaint is well taken and will be granted.

## VI.

### *All Remaining Counts*

The remaining counts against defendant Williams set forth causes of action either under Tennessee statutes or under Tennessee common law. Because this court has dismissed all of plaintiffs' federal causes of action against defendant Williams, this court will decline to exercise supplemental jurisdiction over plaintiffs' state law claims against her. *See* 28 U.S.C. § 1367(c)(3). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Order accordingly.

                                                  *s/ James H. Jarvis*
                                            UNITED STATES DISTRICT JUDGE